## STATE OF CONNECTICUT *v.* SHARON MOBLEY

SUPERIOR COURT    GEOGRAPHICAL AREA NO. 6    FILE NO. 6-337571
AT NEW HAVEN

Memorandum filed August 28, 1993

*Joseph J. Harry,* deputy assistant state's attorney, and *Mary A. Reidy,* assistant state's attorney, for the state.

*Shawn G. Tiernan,* deputy assistant public defender, for the defendant.

LEVIN, J. The principal issues in this proceeding, in which the state claims that the defendant violated the terms of her probation, are whether the sentencing judge imposed treatment for alcohol abuse as a condition of the defendant's probation and, if not, whether the defendant's probation officer could and did do so. This court concludes that (1) no condition of probation was imposed by the sentencing judge, (2) the condition

of alcohol abuse evaluation and treatment was imposed by the defendant's probation officer, (3) such a condition constitutes medical treatment within the ambit of General Statutes § 53a-30 (a) and was a validly imposed condition of probation, and (4) the defendant violated that condition of her probation.

## I

On March 13, 1991, the defendant appeared in Superior Court and pleaded guilty under the *Alford* doctrine[1] to the crimes of reckless endangerment in the first degree in violation of General Statutes § 53a-63[2] and threatening in violation of General Statutes § 53a-62.[3] The court, *Clark, J.*, accepted the defendant's pleas. The court thereupon imposed concurrent sentences of three months imprisonment for the crime of threatening and one year imprisonment for the crime of reckless endangerment. The sentences were suspended and the defendant was placed on probation for two years.

The certified transcript of the proceedings before the court reflects that the state recommended a sentence of three months imprisonment for threatening and one

---

[1] See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] "[General Statutes] Sec. 53a-63. RECKLESS ENDANGERMENT IN THE FIRST DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person.

"(b) Reckless endangerment in the first degree is a class A misdemeanor."

[3] "[General Statutes] Sec. 53a-62. THREATENING: CLASS A MISDEMEANOR. (a) A person is guilty of threatening when (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience.

"(b) Threatening is a class A misdemeanor."

year imprisonment for reckless endangerment, to run concurrently, and that the sentences be suspended. The state also recommended, as a condition of probation, "[a]lcohol screening [and] treatment as deemed necessary, by [the office of adult] probation." The defendant's attorney asked the court "to accept the recommendation," adding that "the suspended sentence is a fair disposition to her."

The state claims that the defendant violated the terms of her probation by refusing treatment for alcohol abuse.

## II

The first question is whether the sentencing judge imposed any conditions of probation at all. At trial, the court admitted as a full exhibit the docket sheet in the underlying criminal case. On that docket sheet, the clerk had written: "3 mos E/S 2 yrs CPO 1 yr E/S 2 yrs COP Alcohol eval & treatment as deemed nec." Unidentified initials appear next to these words and, in the lower right hand corner, the document is signed by the sentencing judge. A copy of a page from the actual docket on the day of the plea and sentencing, containing the same information, also was admitted as an exhibit. The state claims that the docket sheet is a "judgment file" and, as such, is conclusive evidence of the judgment. See *Varanelli* v. *Luddy,* 130 Conn. 74, 78–79, 32 A.2d 61 (1943).

The docket sheet is not a judgment file. "There is a distinction between the judgment of the court, such notations as in the present case appear . . . in the docket of the court, and the judgment-file. The judgment is the determination or sentence of the law speaking through the court, pronounced or made known in some appropriate way, orally or in writing or partly in each. The notations . . . in the docket are the entries made when a judgment is rendered in order to

preserve accurately and put upon immediate public record the acts of the court. The judgment-file consists of the writing out of the judgment for record, giving a history of the various steps in the action leading up to it, and it is prepared and signed at a time subsequent to the rendition of the judgment. *Bulkeley's Appeal,* 76 Conn. 454, 457, 57 Atl. 112 [1904]; *Sisk* v. *Meagher,* 82 Conn. 376, 73 Atl. 785 [1909]; *Hull* v. *Thoms,* 82 Conn. 386, 391, 73 Atl. 793 [1909]; *Brown* v. *Cray,* 88 Conn. 141, 146, 89 Atl. 1123 [1914]; *Goldberg* v. *Krayeske,* 102 Conn. 137, 143, 128 Atl. 27 [1925]. The notations made by the clerk . . . in the docket need no particular authentication but, appearing as made by him in the appropriate place, may be presumed to be accurate. Such entries, duly authenticated, may stand as adequate evidence of a judgment. *Buckley* v. *Spirt,* 108 Conn. 733, 143 Atl. 844 [1928]. But it is the judgment-file, signed by the judge or clerk of the court, which is the proper evidence of the rendition of the judgment and its terms. *Brown* v. *Cray,* supra. When such a judgment-file has been prepared, whether or not entries made upon the original papers or in the docket at the time the judgment was rendered are signed is not of consequence. Such entries having been made, the formal judgment-file may thereafter be prepared from them and signed by the clerk or any assistant clerk having authority to act in his stead." *State* v. *Lindsay,* 109 Conn. 239, 242–43, 146 A. 290 (1929). It is the formal nature of a judgment file, as contrasted with less formal docket entries, that contributes to the conclusive effect given it. See, e.g., Practice Book Forms 107.1 through 107.17.

While there is no time within which a judgment file must be prepared; *State* v. *Lindsay,* supra, 243; it does not appear that the state ever caused or requested such a document to be prepared as it could have done. Prac-

tice Book § 944.[4] A judgment file was not offered in evidence, and the court takes judicial notice that no such document is in the court's file. See *State* v. *Lenihan,* 151 Conn. 552, 554, 200 A.2d 476 (1964) (court may take judicial notice of court file).

The docket sheet and docket entries are admissible evidence of the judgment rendered. *Buckley* v. *Spirt,* supra, 733–34; *Smith* v. *Brockett,* 69 Conn. 492, 502, 38 A. 57 (1897); *Gillespie* v. *Gallant,* 1 Conn. Cir. Ct. 594, 596, 24 Conn. Sup. 357, 190 A.2d 607 (1963); 30 Am. Jur. 2d, Evidence § 979 (1967); cf. General Statutes § 51-52; Practice Book § 395. Such docket entries, however, even if deemed presumptively correct; *Stafford Higgins Industries, Inc.* v. *Norwalk,* 15 Conn. App. 752, 757, 546 A.2d 340 (1988); *DiSimone* v. *Vitello,* 6 Conn. App. 390, 393, 505 A.2d 745 (1986); are not conclusive evidence of the judgment. At best, the docket sheet signed by the sentencing judge "is prima facie the judgment of the court, and is evidence of what the court has decided." *Stafford Higgins Industries, Inc.* v. *Norwalk,* supra. That is, it is "evidence which, *if credited,* is sufficient to establish the facts which it is adduced to prove." (Emphasis in original; internal quotation marks omitted.) *Berchtold* v. *Maggi,* 191 Conn. 266, 270, 464 A.2d 1 (1983).

"The final judgment in a criminal case ordinarily is the imposition of sentence." *State* v. *Herring,* 209 Conn. 52, 55, 547 A.2d 6 (1988). Ordinarily, the sentence is imposed orally by the trial judge. *State* v. *Lindsay,* supra, 243. "The judicial authority shall impose the sentence in the presence *and hearing* of the defendant, unless the defendant shall have waived his right to be present." (Emphasis added.) Practice Book

---

[4] Practice Book § 944 provides: "JUDGMENT FILES

"In criminal cases judgment files shall not be drawn except where an appeal is taken, where sentence review is requested or where a written request is made to the clerk."

§ 919 (5). Here, a certified transcript of the sentencing was admitted as a full exhibit. Such a transcript is "prima facie a correct statement of the testimony and proceedings" before the court. General Statutes § 52-161.[5] That transcript reflects that the sentencing judge imposed the suspended sentences indicated in the docket sheet and a two year period of probation. The transcript reflects, and this court finds, however, that the sentencing judge, albeit by inadvertent omission, imposed no conditions of probation.[6] Cf. *Alcorn* v. *Fellows,* 102 Conn. 22, 25–26, 127 A. 911 (1925). "The journal entry or signed document is not the order of the court. The order of the court is the pronouncement made by the judge in open court." *Spriggs* v. *United States,* 225 F.2d 865, 868 (9th Cir. 1955), cert. denied, 350 U.S. 954, 76 S. Ct. 342, 100 L. Ed. 830 (1956).

[5] "[General Statutes] Sec. 52-161. TRANSCRIPT OF STENOGRAPHER'S OR COURT REPORTER'S RECORD PART OF OFFICIAL RECORD. An exemplified transcript of the record of any official stenographer or court reporter shall be prima facie a correct statement of the testimony and proceedings and shall constitute a part of the official record in the cause or matter in which such stenographer's or reporter's record was made."

[6] The inference that the omission to impose the condition of probation was inadvertent is supported by three factors. First, the defendant's attorney requested the sentencing judge to accept, the state's recommended sentence. That sentence included the condition that the defendant undergo alcohol abuse screening and treatment as deemed necessary by the office of adult probation. Second, the sentencing judge expressed no reservations nor made any further inquiry but, after affording the defendant allocation, which she declined, proceeded to impose the sentence otherwise as recommended by the state. Third, the evidence reflects that the defendant's case was on page ten, line forty-two of the court's regular "family violence" docket, and that the sentencing judge had at least one other docket before him that day in the Superior Court for geographical area six, which includes the city of New Haven. Even when confronted with only documentary evidence "the [c]ourt can 'recognize the realit[ies]' of the case before it." *DiMauro* v. *Pavia,* 492 F. Sup. 1051, 1059 (D. Conn.), aff'd, 614 F.2d 1206 (2d Cir. 1979), quoting *Securities & Exchange Commission* v. *Research Automation Corporation,* 585 F.2d 31, 35 (2d Cir. 1978). The reality in this case is that the sentencing judge, confronted with a full docket in a busy geographic area criminal court, inadvertently omitted to recite the condition of probation recommended by the state, and to which the defendant had agreed.

Since the docket sheet and the transcript are deemed prima facie correct, and since those two documents are conflicting, the court must make a principled choice between them. "Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them." *United States* v. *Daugherty,* 269 U.S. 360, 363, 46 S. Ct. 156, 70 L. Ed. 309 (1926).[7] "A high degree of exactitude is required in the pronouncement of the sentence. The sentence should be definite and certain. Sentencing should clearly reveal the intention of the court and conform to the statutory limitations." *State* v. *Turbeville,* 235 Kan. 993, 1003, 686 P.2d 138 (1984); see *United States* v. *Naas,* 755 F.2d 1133, 1136 (5th Cir. 1985); *Brook* v. *United States,* 223 F.2d 393, 395 (10th Cir. 1955); *Walters* v. *State,* 259 Ark. 447, 448, 533 S.W.2d 517 (1976); *Merritt* v. *Common-*

---

[7] The jurisdictions are divided over whether probation is deemed to be part of a criminal sentence. Compare *People* v. *Milne,* 690 P.2d 829, 837 (Colo. 1984); *State* v. *Lynch,* 223 Neb. 849, 863, 394 N.W.2d 651 (1986); *State* v. *Vernon,* 218 Neb. 539, 542, 356 N.W.2d 887 (1984); *Commonwealth* v. *Fiore,* 341 Pa. Super. 305, 311, 491 A.2d 276 (1985); *Yates* v. *State,* 792 P.2d 187, 189 (Wyo. 1990); holding that probation is a sentence, with *State* v. *Muldoon,* 159 Ariz. 295, 298, 767 P.2d 16 (1988); *Addison* v. *State,* 452 So. 2d 955, 956 (Fla. App. 1984); *People* v. *Boucher,* 10 Ill. App. 3d 750, 751, 295 N.E.2d 334 (1973); *State* v. *Generoso,* 156 N.J. Super. 540, 545, 384 A.2d 189 (1978); *State* v. *Collins,* 100 Or. App. 311, 314 n.3, 785 P.2d 1084 (1990) (not sentence, but punishment); *Vanderburg* v. *State,* 681 S.W.2d 713, 719 (Tex. App. 1984) (probation is contractual); *State ex rel. Strickland* v. *Melton,* 152 W. Va. 500, 505, 165 S.E.2d 90 (1968); *State* v. *Foley,* 142 Wis. 2d 331, 342, 417 N.W.2d 920 (1987) (not sentence but part of sentencing process); holding that probation is not a sentence. In Connecticut, however, the legislature has deemed probation to be a sentence. General Statutes § 53a-30 (a) provides in pertinent part: "When imposing *sentence of probation* or conditional discharge, the court may, *as a condition of the sentence,* order that the defendant" do or refrain from doing certain specified acts. (Emphasis added.) See also *Michaels* v. *York,* 31 Conn. Sup. 350, 352, 330 A.2d 466 (1974). This court does not hold that probation is a sentence for all purposes. See *Delevieleuse* v. *Manson,* 184 Conn. 434, 440, 439 A.2d 1055 (1981) (construing "sentence" and "effective sentence" for purposes of statutory "good time").

*wealth,* 447 S.W.2d 625, 627 (Ky. 1969); *State* v. *Sturgis,* 110 Me. 96, 99, 85 A. 474 (1912); *Richmond* v. *State,* 484 S.W.2d 280, 282 (Mo. 1972); *Anthony* v. *Kaiser,* 350 Mo. 748, 752, 169 S.W.2d 47 (1943); *In re Swink,* 243 N.C. 86, 91, 89 S.E.2d 792 (1955); *Hudson* v. *Youell,* 178 Va. 525, 533, 17 S.E.2d 403 (1941), aff'd, 179 Va. 442, 19 S.E.2d 705, cert. denied, 317 U.S. 630, 63 S. Ct. 47, 87 L. Ed. 508 (1942). "It should not be necessary for a nonjudicial or ministerial officer to supplement the written record to ascertain its meaning." *People* v. *Akers,* 137 Ill. App. 3d 922, 928, 484 N.E.2d 1160 (1985); *Grant* v. *State,* 635 S.W.2d 933, 936 (Tex. App. 1982); *State* v. *Boles,* 150 W. Va. 381, 355, 146 S.E.2d 524 (1966). "The proper administration of justice requires a rule that will make it unnecessary for anyone to try to figure out what the sentencing judge had in mind when imposing sentence." *People* v. *Davis,* 125 Ill. App. 3d 568, 569, 466 N.E.2d 331 (1984). Adopting this rule, this court holds that where there is a direct conflict between the oral pronouncement of a criminal sentence and a docket sheet, the oral pronouncement must control. Cf. *United States* v. *Marquez,* 506 F.2d 620, 622 (2d Cir. 1974), and cases cited therein.

This is not a case where there is an ambiguity between the oral pronouncement of the sentence and the docket papers. In such a circumstance it may be proper to look to the clerk's writing and the entire record to resolve the ambiguity. See *United States* v. *Moyles,* 724 F.2d 29, 30–31 (2d Cir. 1983); *United States* v. *Purcell,* 715 F.2d 561, 563 (11th Cir. 1983); *David* v. *United States,* 579 A.2d 1172, 1176 (D.C. 1990). In such cases, however, it has been held that "[a]mbiguity or doubts relative to a sentence should be resolved in favor of the accused." *State* v. *DeAngelis,* 257 S.C. 44, 50, 183 S.E.2d 906 (1971); accord *United States* v. *Raftis,* 427 F.2d 1145, 1146 (8th Cir. 1970); *Gaddis* v. *United States,* 280 F.2d 334, 336 (6th Cir. 1960);

*Downey* v. *United States,* 91 F.2d 223, 226 (D.C. Cir. 1937); *Aderhold* v. *McCarthy,* 65 F.2d 452, 453 (5th Cir. 1933); *Cross* v. *Huff,* 208 Ga. 392, 396, 67 S.E.2d 124 (1951). Here, however, there is no ambiguity. The sentencing judge imposed no condition on the defendant's probation.

## ADDENDUM TO PART II

The state cites *Skidmore* v. *Glenn,* 781 S.W.2d 672, 674 (Tex. App. 1989), for the proposition that "a mere docket entry would not be sufficient to constitute a judgment or a decree of court, unless there is an indication in the record of the hearing that the trial court called the docket notation to the parties' attention in open court or filed the docket sheet with the clerk as his judgment." First, the record here does not reflect that the sentencing judge "called *the docket notation* to the parties' attention in open court." (Emphasis added.) Id. Second, to hold on this record that the sentencing judge "filed the docket sheet with the clerk as his judgment"; id.; and to thereby give conclusive effect to the docket sheet would be contrary to the spirit, if not the letter, of *State* v. *Lindsay,* supra, 242–43, and Practice Book § 919 (5), elevating a mere docket sheet to an office it ought not hold, even "in this day of suffocating court dockets." *Fengler* v. *Northwest Connecticut Homes, Inc.,* 215 Conn. 286, 291, 575 A.2d 696 (1990). Reality compels the recognition that, unlike a judgment file, not every docket sheet in a geographical area criminal court is "signed by the trial judge after *careful* examination." (Emphasis added.) *Formby's KOA* v. *BHP Water Supply Corporation,* 730 S.W.2d 428, 430 (Tex. App. 1987). In the pronouncement of a criminal sentence such exacting care is required.

## III

Although the sentencing judge did not impose any condition of probation, the state suggests in its post-

trial brief that the office of adult probation properly imposed alcohol abuse treatment as a condition of probation pursuant to General Statutes § 53a-30 (b). That subsection states: "When a defendant has been sentenced to a period of probation, the office of adult probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court."[8] Upon

---

[8] "[General Statutes] Sec. 53a-30. CONDITIONS OF PROBATION AND CONDITIONAL DISCHARGE. (a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip him for a suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support his dependents and meet other family obligations; (4) make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance; (5) if a minor, (A) reside with his parents or in a suitable foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) if convicted of a misdemeanor or a felony, other than a capital felony, a class A felony or a violation of section 21a-278, 21a-278a, 53a-55, 53a-56, 53a-56b, 53a-57, 53a-58 or 53a-70b or any offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court, and any sentence of imprisonment is suspended, participate in an alternate incarceration program; (9) participate in a program of special alternative incarceration in accordance with section 53a-39b; (10) reside in a residential community center or halfway house approved by the commissioner of correction, and contribute to the cost incident to such residence; (11) participate in a program of community service labor in accordance with section 53a-39c; (12) satisfy any other conditions reasonably related to his rehabilitation. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(b) When a defendant has been sentenced to a period of probation, the office of adult probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court.

"(c) At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section

review of this claim raised in the state's brief, the court requested that the defendant file a reply brief addressing it. The defendant did so.

The facts pertinent to this issue may be briefly stated. Later on the same day on which she was sentenced by the court, the defendant met with a probation officer. Both the defendant and the probation officer signed a document entitled "Conditions of Probation," which provided in pertinent part:

"NOTICE TO DEFENDANT

"In accordance with the authority conferred by the State of Connecticut and in keeping with the requirements of the Connecticut General Statutes you, as of the above date, have been placed on probation by the Superior Court for the period specified above.

"You are hereby advised that the court may at any time during the period of probation, modify or enlarge the conditions of your probation, and may extend the period of probation, as authorized by the General Statutes. The court may also issue a warrant for your arrest, revoke your probation and require you to serve the sentence imposed or impose any lesser sentence for a violation of any of the conditions of your probation.

"DURING THE PERIOD OF PROBATION YOU SHALL ABIDE BY THE FOLLOWING CONDITIONS:

"1. Do not violate any criminal law of the United States, this state or any other state.

---

or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(d) The period of participation in an alternate incarceration program, unless terminated sooner, shall not exceed the period of probation authorized by section 53a-29 or two years, whichever is less."

"2. Report as a Probation Officer directs and permit the officer to visit you as circumstances require.

"3. Keep the officer informed of your whereabouts and give immediate notice of any change in address or employment.

"4. Do not leave the State of Connecticut without permission.

"5. Agree to waive extradition from any state or territory.

"6. Court Ordered-Special Conditions:

"Alcohol evaluation and treatment as deemed necessary.

"I have read and the officer has reviewed the conditions of probation with me. I understand them and I shall abide by them."

On March 26, 1991, when the defendant met with the probation officer to whom her case had been assigned, she again signed the "Conditions of Probation" document, as did that officer. The probation officers imposed the condition of "alcohol evaluation and treatment as deemed necessary" because they mistakenly believed that such a condition had been imposed by the sentencing judge. Their motivation in imposing the condition, however, is irrelevant. Cf. *Caserta* v. *Zoning Board of Appeals*, 219 Conn. 352, 361–62, 593 A.2d 118 (1991).

## A

In her reply brief, the defendant claims that "since the [arrest] warrant and the testimony presented by the state never mentioned or relied upon" General Statutes § 53a-30 (b), "[t]he defendant had no notice of the state's reliance on this statute." As a result, claims the defendant, the state's reliance on § 53a-30 (b) in its

posttrial brief is "a clear violation of the notice, counsel, and cross-examination requirements of Connecticut General Statutes § 53a-32,[9] as well as the defendant's rights to due process, to counsel, and to confrontation under the federal and state constitutions."

Preliminarily, this court holds that only the defendant's claim that she is being denied notice and proce-

---

[9] "[General Statutes] Sec. 53a-32. VIOLATION OF PROBATION OR CONDITIONAL DISCHARGE; ARREST; PROCEDURE. (a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

dural due process is properly before the court. Practice Book § 877 provides: "In trials to the court, if counsel intends to raise any question of law which may be the subject of an appeal, he must state that question distinctly to the judicial authority on the record before his argument is closed and within sufficient time to give the opposing counsel an opportunity to discuss the question, and he must request the judicial authority to take note of the question. If he fails to do this, the judicial authority will be under no obligation to decide the question." "Argument" may be either oral or written. Black's Law Dictionary (6th Ed.). Briefs certainly are a form of legal argument. Id.; W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 327 and pp. 463, 482–90. When briefs are submitted in a trial to the court, the trial is not completed and argument is not closed until such briefs are timely filed. *Frank* v. *Streeter,* 192 Conn. 601, 604, 472 A.2d 281 (1984); see also Practice Book § 285A;[10] *State* v. *Sul,* 146 Conn. 78, 81–82, 147 A.2d 686 (1958); but see *Tragakiss* v. *Dowling,* 183 Conn. 72, 75–76, 438 A.2d 818 (1981); *Stavnezer* v. *Cooley,* 115 Conn. 452, 455, 161 A. 863 (1932). The defendant's terse suggestion in her reply brief that she was denied her rights to counsel and to cross-examination does not comply with the procedural requirement that a question of law be "distinctly" stated. *Robinson* v. *ITT Continental Baking Co.,* 2 Conn. App. 308, 312, 478 A.2d 265 (1984); cf. *State* v. *Knighton,* 7 Conn. App. 223, 226, 508 A.2d 772 (1986).

[10] Practice Book § 285A provides: "TRIAL BRIEFS; CLAIMS OF LAW

"The parties may, as of right, or shall, if the court so orders, file, at such time as the court shall determine, written trial briefs discussing the issues in the case and the factual or legal basis upon which they ought to be resolved.

"If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."

This is especially true of constitutional claims. *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 603, 539 A.2d 101 (1988); *Ierardi* v. *Commission on Human Rights & Opportunities,* 15 Conn. App. 569, 585–86, 546 A.2d 870, cert. denied, 209 Conn. 813, 550 A.2d 1082 (1988).

With respect to the defendant's claim that she has been denied procedural due process by the state's reliance on § 53a-30 (b), the arrest warrant pursuant to which these proceedings for the revocation of probation are based; Practice Book § 943;[11] recites that it was the sentencing judge who ordered alcohol abuse evaluation and treatment as a condition of the defendant's probation. "A probation revocation hearing is not a criminal prosecution. *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). It does not require all of the procedural components associated with an adversary criminal proceeding. *Morrissey* v. *Brewer,* 408 U.S. 471, 480, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)." *State* v. *Wright,* 24 Conn. App. 575, 580, 590 A.2d 486 (1991). However, "[t]he due process clause of the fourteenth amendment to the

---

[11] Practice Book § 943 provides: "REVOCATION OF PROBATION

"In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of his probation or his conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Secs. 634 and 660. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that he committed the violation, the judicial authority may make any disposition authorized by law."

United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. *Black* v. *Romano,* 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985); see *Morrissey* v. *Brewer,* [supra]." *State* v. *Durkin,* 219 Conn. 629, 635, 595 A.2d 826 (1991); see *State* v. *Baxter,* 19 Conn. App. 304, 316, 563 A.2d 721 (1989).

"The pleadings of a motion to revoke probation need not meet the requirements of an indictment. It is enough that the pleadings give the defendant fair notice of the allegations against him so that he may prepare a defense." *Mueller* v. *State,* 735 S.W.2d 269, 270 (Tex. App. 1987); accord *State* v. *Turnbull,* 114 Ariz. 289, 291, 560 P.2d 807 (1977); *People* v. *Monick,* 51 Ill. App. 3d 783, 787, 367 N.E.2d 225 (1977); *State* v. *Martinez,* 811 P.2d 205, 210–11 (Utah 1991). While a probationer is not necessarily denied due process where the pleading charging him with violating a condition of probation is not as specific as is required in a criminal information; *Baker* v. *State,* 428 So. 2d 684, 686 (Fla. App. 1983); a probationer is denied due process where his probation is revoked on the basis of acts not alleged as reasons for such action. *Kane* v. *State,* 397 So. 2d 1169, 1169–70 (Fla. App. 1981).

Here, however, there is no claim of lack of specificity. Rather, the defendant claims that her probation may not be revoked where the arrest warrant asserts that the condition that she allegedly violated was imposed by the sentencing judge and the evidence is that the condition was imposed by her probation officer. No case on point, from any jurisdiction, has been cited by counsel or located by this court. Because a proceeding to revoke probation is not a criminal proceeding; *State* v. *Wright,* supra; and because in such a proceeding the defendant is entitled to only minimum procedural safeguards, this court holds that the state's

misidentification of the authority imposing the condition of probation is not a denial of the defendant's right to due process. Cf. *In re Steven G.,* 210 Conn. 435, 556 A.2d 131 (1989) ("fundamental fairness" standard not violated by midtrial amendments to delinquency petition). This conclusion is buttressed by the fact that the defendant had actual knowledge that the condition existed and that the warrant, while it misidentifies the authority imposing the condition of probation, nonetheless satisfies the statutory requirements of General Statutes § 53a-32 (a).

Moreover, while this is not a criminal proceeding in which the defendant is entitled to all of the exacting requirements of criminal procedural due process; *State* v. *Durkin,* supra; *State* v. *Baxter,* supra; our Appellate Court has stated in just such a context: "In order for a defendant who is convicted on the basis of an imprecise information to prevail on appeal, he must establish 'a clear and specific showing of prejudice to the defense. . . .' *State* v. *Hauck,* [172 Conn. 140, 151, 374 A.2d 150 (1976)]; see *State* v. *Laracuente,* 205 Conn. 515, 518–21, 534 A.2d 882 (1987). Such a showing amounting to a deprivation of his constitutional right to adequate notice of the charges against him is not made, however, merely by establishing that the 'presentation of his . . . defense may be more burdensome and difficult.' *State* v. *Evans,* [205 Conn. 528, 536, 534 A.2d 1159 (1987)]; *State* v. *Saraceno,* [15 Conn. App. 222, 237, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988)]." *State* v. *Mancinone,* 15 Conn. App. 251, 258, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). Apart from a bald assertion of prejudice, the defendant's only showing of prejudice is that "the state successfully objected [to] a question by defense counsel to [Probation] Officer Steel[e] concerning his

broad discretionary powers, arguing that the question was irrelevant." Since this court finds that the probation officer imposed the disputed condition of probation because he believed that the sentencing judge had imposed it, the defendant was not prejudiced by the sustaining of the state's objection to the question. Moreover, the question called for a nonlawyer to offer a legal opinion and "[a] witness is incompetent to offer a legal opinion; *Turner's Appeal,* 72 Conn. 305, 316, 44 A. 310 (1989); except on the issue of foreign law. C. Tait & J. LaPlante, [Connecticut Evidence (2d Ed. 1988) §§ 7.12.3, 7.17.2]." *Orange Street Armory Associates, Inc.* v. *New Haven,* 17 Conn. App. 166, 173, 551 A.2d 749 (1988). Where there is no prejudice there is no denial of due process. See *State* v. *Baxter,* supra.

Accordingly, the defendant's claim that she is denied procedural due process by the state's reliance on the authority conferred by General Statutes § 53a-30 (b) on the office of adult probation to impose conditions of probation is without merit.[12]

## B

The defendant next claims that the condition of probation imposed by her probation officers violated the intent of the sentencing court. Section 53a-30 (b) authorizes the office of adult probation to "require that the defendant comply with any or all conditions which the

---

[12] In light of this conclusion, it is unnecessary to decide whether this court would have been constrained to take judicial notice of the authority conferred on probation officers by General Statutes § 53a-30 (b) and to apply that statute had the state not cited it. "Where a decision ignores a clearly applicable statute . . . it is contrary to the law and cannot stand. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259, cert. denied, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 221 (1980); *Pelletier* v. *White,* 33 Conn. Sup. 769, 772, 371 A.2d 1068 (1976)." *DeVita* v. *Esposito,* 13 Conn. App. 101, 111, 535 A.2d 364 (1987), cert. denied, 207 Conn. 807, 540 A.2d 375 (1988); see also *State* v. *Preyer,* 198 Conn. 190, 199, 502 A.2d 858 (1985); *State* v. *Burke,* 182 Conn. 330, 332, 438 A.2d 93 (1980).

court could have imposed . . . which are *not incon-sistent with any condition actually imposed by the court.*" (Emphasis added.) Since the sentencing judge imposed no condition of probation, the conditions imposed by the probation officer are "not inconsistent with any condition actually imposed by the court." Moreover, while silence, in various contexts, is often deemed to amount to acquiescence or assent; *State* v. *Leecan,* 198 Conn. 517, 522, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986) (evidence of silence in face of prearrest accusatory statement admitted as admission); *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 710, 448 A.2d 180 (1982) (silence may constitute acceptance of offer); *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 59, 221 A.2d 589 (1966) (silence by property owner to municipal improvement as assent to validity of assessment); the defendant's claim assumes that the sentencing judge purposefully and intentionally rejected alcohol evaluation and treatment as a condition of probation. As discussed previously, this court does not so find.

C

The defendant claims that subsection (b) of General Statutes § 53a-30, which authorizes the office of adult probation to impose conditions of probation, conflicts with subsection (c) of that statute, which provides that "after hearing and for good cause shown, the court may modify or enlarge the conditions" of probation. "Generally, no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . . Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." (Citation omitted; internal quotation marks omitted.) *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978). The defendant may claim that it is incongruous for the

legislature to authorize the office of adult probation to impose additional conditions of probation without a hearing, but while authorizing the court to "modify or enlarge the conditions" of probation only "after hearing and for good cause shown." That, however, is what the legislature has done. Subsections (b) and (c) of § 53a-30 are not in conflict. Any claimed anomaly must be addressed to the General Assembly and not to the judiciary. *Bailey* v. *Mars,* 138 Conn. 593, 598, 87 A.2d 388 (1952).

Citing the rule that penal statutes should be strictly construed in favor of the defendant, the defendant claims that the procedural requirements of subsection (c) of General Statutes § 53a-30 must be impressed on subsection (b). A probation statute such as § 53a-30 is "reformatory" or remedial, not penal. *Belden* v. *Hugo,* 88 Conn. 500, 504, 91 A. 369 (1914); *Rease* v. *Commonwealth,* 227 Va. 289, 294, 316 S.E.2d 148 (1984). Such "a remedial statute . . . requires a liberal rather than a strict construction in aid of its manifest purpose." *Merchants Bank & Trust Co.* v. *Pettison,* 112 Conn. 652, 655, 153 A. 789 (1931). "Courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them. This is especially so when it appears that the omission was intentional." *State* v. *Nelson,* 126 Conn. 412, 416, 11 A.2d 856 (1940); *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 414, 311 A.2d 65 (1972); *Bailey* v. *Mars,* supra.

Finally, it is noteworthy that the comment to § 53a-30 by the Commission to Revise the Criminal Statutes states: "It is contemplated that, in sentences of probation, the court will, as it does now, usually leave the conditions to be set by the probation authorities." Penal Code Comments, Connecticut General Statutes (1969)

p. 16. Since the commission was specially authorized by the legislature to propose and report a general revision of criminal statutes, its comments to that legislation are especially illuminating. 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 48.09; see *State* v. *Kluttz,* 9 Conn. App. 686, 693, 521 A.2d 178 (1987); see generally Commentary on title 53a, the Penal Code, Commission to Revise Criminal Statutes.

### D

The defendant also claims that General Statutes § 53a-30 (b) "usurps the judicial function." This claim is disposed of in *State* v. *Cooley,* 3 Conn. App. 410, 488 A.2d 1283, cert. denied, 196 Conn. 805, 492 A.2d 1240 (1985). In *Cooley,* the Appellate Court stated: "General Statutes § 53a-30 (b) expressly allows either the judge or the probation department to impose reasonable conditions of probation *and such imposition is not an illegal delegation of the judicial function.*" (Emphasis added.) Id., 411 n.2. This court is bound by that conclusion; *Montes* v. *Hartford Hospital,* 26 Conn. Sup. 441, 442–43, 226 A.2d 798 (1966); even though it is contained in a footnote of the court's opinion. *Fuessenich* v. *DiNardo,* 195 Conn. 144, 157 n.8, 487 A.2d 514 (1985). The conclusion in *Cooley* that the imposition of conditions of probation by the office of adult probation is not an illegal delegation of the judicial function was not dicta since the issue had been raised by the defendant in that case. See *Riley* v. *Board of Police Commissioners,* 145 Conn. 1, 5, 137 A.2d 759 (1958); *Sharkiewicz* v. *Smith,* 142 Conn. 410, 412, 114 A.2d 691 (1955). Nor is the binding effect of *Cooley* diminished, as the defendant suggests, by *State* v. *Smith,* 207 Conn. 152, 169 n.12, 540 A.2d 679 (1988), in which the Supreme Court observed: "It is not necessary for us, in the circumstances of this case, to determine whether the office of adult probation could have required the defendant, without a court order, to have

submitted to the conditions imposed in fact by the trial court . . . . This is so because the challenged conditions were imposed by the court after application and hearing and a finding of good cause." "It is the general rule that a case resolves only those issues explicitly decided in the case." *State* v. *Ouellette,* 190 Conn. 84, 91, 459 A.2d 1005 (1983). The court in *State* v. *Smith,* supra, explicitly found that it was unnecessary to decide the issue presented here.

E

The defendant argues that imposition of a condition of probation by a probation officer without a hearing pursuant to General Statutes § 53a-30 (b) violates the equal protection provisions of the fourteenth amendment to the United States constitution and article first § 20, of the Connecticut constitution[13] since if a court were to so modify or enlarge the defendant's conditions of probation, it could do so only "after hearing and for good cause shown," pursuant to General Statutes § 53a-30 (c).

"When a statutory classification impinges upon an inherently suspect class or affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest." *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982). Where, as here, the statutory classification does not impinge on an inherently suspect class and does not

---

[13] Section 1 of the fourteenth amendment to the constitution of the United States provides in pertinent part: "No State shall make or enforce any law which shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Article first, § 20, of the constitution of Connecticut, as amended by amendment twenty-one, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

affect fundamental personal rights, "[t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection. *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). The constitutional issue is whether legislative classifications or discriminations bear a rational relationship to a legitimate state end and [are] based on reasons related to the pursuit of that goal. *Gentile* v. *Altermatt,* 169 Conn. 267, 295, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). *Caldor's, Inc.* v. *Bedding Barn, Inc.,* [177 Conn. 304, 314–15, 417 A.2d 343 (1979)]. [T]he judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." (Internal quotation marks omitted.) *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 26–27 (1987); see *State* v. *Dupree,* 196 Conn. 655, 664, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985). "The test, however, is whether this court can *conceive* of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis. See *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 642, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980)." (Emphasis in original.) *Faraci* v. *Connecticut Light & Power Co.,* 211 Conn. 166, 169 n.2, 558 A.2d 234 (1989).

The General Assembly may well have concluded that a probationer's probation officer would be more familiar

with the circumstances of an individual probationer, owing to an ongoing professional relationship between the probation officer and the probationer. General Statutes § 54-108, entitled "Duties of probation officers," provides in pertinent part: "Probation officers shall investigate all cases referred to them for investigation by the director [of probation] or by the court. They shall furnish to each person released under their supervision a written statement of the conditions of probation and shall instruct him regarding the same. They shall keep informed of his conduct and condition and use all suitable methods to aid and encourage him and to bring about improvement in his conduct and condition. . . ." As a result of a probation officer's familiarity with a probationer's circumstances, the General Assembly may well have concluded that a probation officer was especially well suited to impose additional conditions of probation without a hearing. On the other hand, a court may act only on the evidence before him and is prohibited from going outside of the record and importing into its deliberation information obtained elsewhere. Therefore, there is a rational basis for the difference by which a probation officer, as opposed to the court, may proceed without notice or hearing pursuant to General Statutes § 53a-30 in adding conditions of probation.

F

Finally, the defendant maintains that alcohol abuse evaluation and treatment are not within the ambit of the first eleven conditions of probation enumerated in General Statutes § 53a-30 (a). The defendant argues that this "leaves § 53a-30 (a) (12), which requires the probationer to 'satisfy any other conditions reasonably related to his rehabilitation.' The combination of §§ 53a-30 (a) (12) and 53a-30 (b), if read literally, present a broad and virtually unregulated field of power in the hands of the probation officer."

This court concludes that the condition that the defendant undergo "alcohol treatment," which the court construes to be treatment for alcohol abuse, constitutes "medical treatment" within the ambit of General Statutes § 53a-30 (a) (2). First, the statute "is remedial and is entitled to a liberal construction." *State v. Tomczyk,* 20 Conn. Sup. 67, 69, 123 A.2d 283 (1956); *Rease* v. *Commonwealth,* supra; see *Belden* v. *Hugo,* supra. Second, the term "medical treatment" is broad and general and includes treatment pertaining to the science of medicine. Cf. *Olmstead* v. *Lamphier,* 93 Conn. 20, 23–24, 104 A. 488 (1918). "Medicine" is "the science and art dealing with the maintenance of health and the prevention, alleviation or cure of *disease* . . . ." (Emphasis added.) Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). "Alcoholism," in turn, is defined as being a "state of being *poisoned* by alcohol or *diseased* from excessive use of alcoholic liquors." (Emphasis added.) Ballentine's Law Dictionary (1969). Third, while this court need not determine whether alcohol abuse is a medical condition for all purposes, the General Assembly of this state has evidenced its intent to treat alcohol abuse as a medical condition for certain purposes for which medical treatment is appropriate. See General Statutes § 17a-621 et seq. Finally, cases in other jurisdictions recognize that treatment for alcohol abuse is medical treatment or recognize that alcoholism is a disease. *State* v. *Street,* 498 S.W.2d 523, 524 (Mo. 1973) (alcoholism is chronic disease); *Newhook* v. *Blum,* 72 App. Div. 2d 567, 567, 421 N.Y.S.2d 11 (1979) ("reasonable to include alcoholic rehabilitation treatment within the definition of medical care"); *Pierce* v. *Tharp,* 58 Tenn. App. 362, 374, 430 S.W.2d 787 (1967) (citing dictionary definitions of alcoholism as "a diseased condition" or "illness"); *Connecticut General Life Ins. Co.* v. *Department of Industry,* 86 Wis. 2d 393, 407, 273 N.W.2d 206 (1979)

(alcoholism is disease diagnosis of which is matter of expert medical opinion). 3 C.J.S. 768, Alcoholism (1973).

## IV

Finally, upon review of the whole record, the court finds that the defendant refused to submit to treatment for alcohol abuse as was deemed necessary by her probation officer. While the probation officer deemed such treatment necessary on the basis of the opinion of a counselor at the Connecticut Mental Health Center, it again is worthy of emphasis that the probation officer's motive in deeming such treatment necessary is not material in this case. Cf. *Caserta* v. *Zoning Board of Appeals,* supra. The defendant's probation officer personally testified at length and the court finds that the state has established, by reliable and probative evidence, that the defendant wilfully violated a validly imposed condition of her probation.