THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GAROLD G. MONICK, Defendant-Appellant.

Second District No. 76-219

Opinion filed August 15, 1977.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Victor V. Sprengelmeyer, State's Attorney, of Galena (Phyllis J. Perko and Stephen M. Deitsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant appeals from a judgment revoking his probation (which had included a term of periodic imprisonment) and sentencing him to twenty to sixty months imprisonment for the original burglary. He contends that the failure to afford him a preliminary hearing, written notice of the alleged violation of probation and the failure to state the reasons for revocation deprived him of due process. He also contends that the proof was insufficient. The State raises an additional issue of mootness.

■■ We are advised that the defendant was placed on parole on October 30, 1976. We conclude that the appeal is not moot. Adverse consequences which may result even if the defendant is not confined prevent mootness since he may be subject to re-sentencing. (*In re Sturdivant,* 44 Ill. App. 3d 410, 412-13 (1976); *People v. Halterman,* 45 Ill. App. 3d 605, 608 (1977). See also *Sibron v. New York,* 392 U.S. 40, 51, 20 L. Ed. 2d 917, 927-28, 88 S. Ct. 1889, 1896 (1968). *Cf. People v. Powell,* 53 Ill. 2d 465, 479 (1973).) We do not adhere to our opinion in *People v. North,* 3 Ill. App. 3d 428, 429 (1972).

■■ We thus reach the question whether defendant was afforded due process in the proceedings which resulted in the revocation of his probationary status. The State has argued that in any event this question has been waived because of defendant's failure to specifically object to the lack of a preliminary hearing before the trial court. However, defendant's trial counsel alluded to the fact that the State had asked for a continuance to file an amended petition to revoke probation and noted that although six weeks had gone by it had not done so. Counsel objected to the fact that the defendant had been held, stating that the hearing could have been held much sooner and that the failure to file the amended petition was "made as a denial of due process for the Defendant and is a matter of holding him in custody and modifying his probation without hearing." We conclude that the reference is sufficient to avoid the waiver. Therefore we review the issue on its merits.

The petition to revoke probation filed on January 26, 1976, was signed by a deputy sheriff for Jo Daviess County and included the allegation "that the undersigned has received information from Sgt. Steve Bacztub, of the Michigan City Police Department, in Michigan City, Indiana which links Garold G. Monick with a felony theft in the state of Indiana which occurred on December 27, 1975."

The original probation order entered on December 17, 1975, included the condition that "defendant shall not violate any statute or ordinance of any jurisdiction." Defendant was arrested under a warrant issued on January 24, 1976, charging the violation of probation. There was no evidentiary hearing prior to the·hearing on the petition to revoke which began on March 1, 1976.

Defendant contends that the minimum requirement of due process includes a preliminary hearing in which the probationer is entitled to notice of the alleged violation, written notice of the conduct claimed to be in violation of the probation order, and a written statement of the reasons for revoking probation after the decision to that effect by the court. He cites *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); *People v. Pier*, 51 Ill. 2d 96 (1972).

First, we do not agree that *Gagnon v. Scarpelli* and *Morrissey v. Brewer* stand for the proposition that there must be a preliminary hearing in the usual sense preceding the probation revocation hearing before an Illinois court can revoke probation. We agree with the State's position that *Gagnon*, while it requires that defendant be afforded due process of law in proceedings to revoke probation, does not mandate that two hearings be conducted in all cases. In *Gagnon*, the Wisconsin Department of Public Welfare, an administrative agency, revoked the defendant's probation summarily without hearing or counsel. *Gagnon* applied to probation revocation proceedings a rule similar to that which had previously mandated a "two tier" hearing for parole violation in *Morrissey v. Brewer*, which also involved an administrative revocation proceeding. The procedure codified in section 5—6—4 of the Illinois Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4), however, provides for judicial proceedings to determine the fact of the violation (par. 1005—6—4(b)) and further provides that the State has the burden of going forward with the evidence and proving the violation by a preponderance of the evidence. The rights of confrontation, cross-examination and representation by counsel are afforded to the defendant (par. 1005—6—4(c)). Further, defendant may appeal from an adverse decision revoking probation under Supreme Court Rule 604(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(b)).

In *People v. Beard*, 59 Ill. 2d 220, 226 (1974), the Illinois Supreme Court concluded that the Illinois statute affords the procedural safeguards which were mandated in *Gagnon*. (See also *People v. Hunt*, 29 Ill. App. 3d 416, 419-22 (1975).) In *Hunt*, the court in referring to *Morrissey v. Brewer*, 408 U.S. 471, 485, 33 L. Ed. 2d 484, 496, 92 S. Ct. 2593, 2602 (1972), noted the stated reason for a hearing preliminary to the revocation of probation is based on the typical substantial time lag between the arrest and the

eventual determination by the Parole Board and the fact that the parolee is often arrested at a place distant from the State institution to which he may be returned before the final decision is made concerning revocation. Therefore, *Morrissey* required that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest as promptly as convenient after arrest while the information was fresh and the sources available. In *Hunt*, at page 421, the appellate court noted that the rule announced in *Morrissey* "is one of reasonableness, which requires a balancing of all relevant circumstances." This as to Hunt raised no issue of prejudicial error since the hearing was scheduled for three weeks following the arrest and any further delay was due to the conduct of the defendant.

■■ Here the defendant was arrested on a bench warrant issued by a judicial officer on January 24, 1976. He appeared in court two days later and the matter was continued to February 17, 1976, and the revocation hearing was held some five weeks later on March 1, 1976. Defendant can show no prejudice based on this timing under the circumstances. See *Morrissey v. Brewer*, 408 U.S. 471, 488, 33 L. Ed. 2d 484, 498, 92 S. Ct. 2593, 2603 (1972) (a lapse of two months held not to be unreasonable). See also *Pearson v. State*, 241 N.W.2d 490 (Minn. 1976); *cf. State v. Miller*, 45 Ohio App. 2d 301, 345 N.E.2d 82 (1975); *Woods v. State*, 526 P.2d 944 (Okla. Crim. App. 1974); *Ewing v. Wyric*, 535 S.W.2d 442 (Mo. 1976).

■■■ Next, defendant argues that the probation revocation petition did not provide him with sufficient notice of his probation violation and therefore did not afford him minimum due process. This question does not appear to have been raised in the trial court and is therefore waived. (See *People v. White*, 33 Ill. App. 3d 523, 531 (1975).) In any event, we find the petition adequate. The defendant is entitled to be informed of the claimed offending conduct from the allegations of a petition to revoke probation, but the same specificity required in an indictment or information is not necessary. (*People v. Johnson*, 13 Ill. App. 3d 1020, 1023-24 (1973), *cert. denied*, 419 U.S. 865, 42 L. Ed. 2d 101, 95 S. Ct. 119 (1974). See also *People v. White*, 33 Ill. App. 3d 523, 532.) Here the petition sufficiently notified defendant that he was charged with the felony theft of an end-loader in Indiana on December 27, 1975. The chief executive officer of the General Construction Company, Inc., of Michigan City, Indiana, testified as to the ownership of the end-loader on December 27, 1975, and its value of $45,000. He said he saw the end-loader on the company's premises during the day on Saturday, December 27 and found it missing when he went to the yard on Sunday, December 28. The gate to the yard had been pushed open. No permission had been given to remove the equipment. He followed the tracks on the road for a matter of about 3 miles but did not see the equipment. He next saw the

machine when it was brought back by the police approximately three weeks later. Defendant's counsel cross-examined the witness seeking to establish that the machine could have been taken out in the usual course of business. The witness, however, answered that the machine was due to be trucked to another town some 40 miles away the following Monday morning.

Deputy Glasgow testified that he went to the Singer Zone Center on January 24, 1976, to pick up the defendant on the warrant for the violation of probation. The officer testified that defendant said "he knew all about it. He said he had talked to his psychiatrist and things were getting pretty hot so he had made a telephone call to John reference an end-loader * * *. [Sic.]" The officer further testified that defendant volunteered that he had taken the end-loader and "hot-wired" it for somebody for $100 but did not know that it was stolen. However, that defendant stated that after he learned it was stolen he had the $100 and "he didn't just want to give it back." He said he drove it six or seven miles and parked it in "John's park." He further testified that defendant read the warrant papers and inquired as to the amount of the bond and said that it was a third-class felony and would "probably be three to six years." Defense counsel cross-examined the witness to establish that the defendant was not given his *Miranda* rights. However, the officer testified that he didn't ask the defendant any questions.

Officer Sheehan testified that the defendant in the course of conversation as to what he did during the Christmas break said, "This deal didn't happen on the way up. This happened on the way back." The officer said that defendant went on to say that he stopped at a truck stop and two men told him he would be paid to drive an end-loader a distance to Jack Klug's Trailer Park, that he thought it was an insurance theft, so that it would be safe. The officer stated that he did not ask him any questions at any time but that the defendant just started talking.

There was a stipulation that the end-loader was found in Hobart, Indiana, and that Hobart is between 30 to 40 miles from Michigan City.

It is thus clear from the record that defendant's counsel knowledgeably cross-examined the State's witnesses. In addition, the record shows that defense counsel sought to dismiss the petition and presented arguments directed at the issue of whether the elements of the theft had been proved.

Defendant's further argument that the failure to inform him of the provisions of the Indiana law which he had violated prejudiced him in defending against the charge is also not persuasive. The State has furnished the Indiana statute in question which the defendant has not disputed:

"35-17-5-3 [10-3030]. Theft in general.—a person commits theft when he (1) knowingly:
(a) obtains or exerts unauthorized control over property of the owner

\* \* \*

or
(f) obtains control over stolen property knowing the property to have been stolen by another, which knowledge may be inferred from the possession of such stolen property, wherever the theft may have occurred;

\* \* \*

and
(2) either:
(a) intends to deprive the owner of the use or benefit of the property;

\* \* \*

[Acts 1963 (Spec. Sess.), ch. 10, §3, p. 10; 1971, P.L. 458, §1, p. 2096.]" (Ind. Code Ann. §35—17—5—3 (Burns 1975).)

As material here the elements of theft are essentially similar to the codification in the Illinois Criminal Code. (See Ill. Rev. Stat. 1975, ch. 38, par. 16—1.) The codification is intended "to cover most conceivable forms of theft" and "to cover every type of conduct previously proscribed by the law, and extending such matching to conduct covered by statutes in other states \* \* \*." Ill. Ann. Stat., ch. 38, par. 16—1, Committee Comments—1961 (Smith-Hurd 1970).

■■■ A court shall take judicial notice of "[a]ll laws of a public nature enacted by any state or territory of the United States." (Ill. Rev. Stat. 1975, ch. 51, par. 48a. See also *People v. Casey*, 399 Ill. 374, 376-77 (1948).) The Indiana statute proscribing theft falls within the category of readily verifiable facts capable of "instant and unquestionable demonstration" which the reviewing court may judicially notice without formal introduction. (*Cf. May Department Stores Co. v. Teamsters Local Union No. 743*, 64 Ill. 2d 153, 159 (1976); *People v. Davis*, 65 Ill. 2d 157, 165 (1976).) Therefore, the failure of the State to introduce the Indiana statute into evidence was not reversible error.

The further contention of the defendant that the trial judge did not recite his reasons for revoking probation and that this deprived him of minimal due process is without merit. The court in its written order, specifically stated that it found from the evidence that the State had proved a violation of the particular paragraph of the probation order which prohibited violation of any statute of any jurisdiction. Moreover, the record fully supplies the basis for the revocation and no prejudice to the defendant is apparent.

■■ Defendant was proved guilty by a preponderance of the evidence of having violated his probation by committing the crime in Indiana in a proceeding which did not deprive him of constitutional due process. We therefore affirm the judgment.

Affirmed.

NASH and WOODWARD, JJ., concur.