THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL WALSH, a/k/a Timothy Martin, Defendant-Appellant.

First District (3rd Division)    No. 1—91—2457

Opinion filed June 14, 1995.

Rita A. Fry, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

At a violation of probation hearing, defendant, Daniel Walsh, was found guilty of violating the conditions of his probation and sentenced to seven years' imprisonment. The issues before this court are (1) whether defendant's petition for substitution of judges was improperly denied; (2) whether the State failed to meet its burden of proving that defendant wilfully refused to pay his probation fee; (3) whether defendant's due process rights were violated by the trial court's failure to make a written statement of the evidence relied on in revoking defendant's probation; (4) whether it was improper to revoke defendant's probation on the basis of failure to report; and (5) whether defendant is entitled to resentencing. We affirm.

On October 26, 1990, defendant, Daniel Walsh, pleaded guilty to robbery. The trial court imposed two years' probation and ordered defendant to pay a $600 probation fee in $25 monthly installments. This case was later reassigned to Judge Moran. On May 22, 1991, defendant was arrested and charged with armed robbery, armed violence, and burglary. This case was also assigned to Judge Moran.

The State filed a petition for violation of probation against defendant, contending that defendant violated the terms of his probation. The petition alleged that defendant violated the conditions of his probation because (1) defendant was arrested and charged with armed robbery, armed violence and burglary while on probation, (2) defendant failed to report to his probation officer after February 11, 1991, until the date of his arrest on May 22, 1991, and (3) defendant failed to make any payments on his $600 probation fee.

On July 9, 1991, at a preliminary proceeding on the armed robbery case, Judge Moran asked defense counsel if a conference would be requested. Defense counsel replied, "Not at this time." The judge indicated he would set this matter for trial to which defense counsel pointed out a request for jury trial. Judge Moran said he was "backed up on juries" and immediately suggested "let's give this a short date, and if we can get to it, we will." After the State announced that it had "decided to elect on the violation of probation on this case," the judge asked defense counsel if based on that would there be a request for a pretrial conference. Defense counsel replied, "We will set it for a hearing."

At defendant's probation revocation hearing, it was stipulated that defendant was placed on probation on October 26, 1990, for robbery. It was further stipulated that defendant was sentenced to two years' probation with a $600 probation fee and the condition that "he appear." Angelyn Parrilli, the probation officer assigned to defendant's case, testified that based on the restitution ledger prepared by the adult probation department, defendant had not paid any of the probation fee. She also testified that defendant failed to report in March, April and May of 1991. On cross-examination, she stated that defendant's history sheet indicated he was unemployed.

Roosevelt Mitchell testified that on May 21, 1991, around 11:50 p.m., he drove his Jeep to a store near 5924 S. Halsted in Chicago. He locked the Jeep and walked across the street to the store. There were many people on both sides of the street. When he saw the store was closed, he headed back toward his Jeep. Defendant rushed into the street with his hands underneath his jacket. Mitchell kept his eyes on him and asked, "[W]hat's happening?" Defendant pulled a revolver from underneath his jacket and pointed it at Mitchell's head. Defendant walked toward Mitchell and yelled "Okay nigger. Okay nigger." Mitchell caught defendant's arm and struggled with defendant. While they were in the street struggling, a woman rushed from the sidewalk to assist defendant. During the struggle Mitchell's keys fell onto the street and another man picked up the keys and ran to the Jeep. When Mitchell managed to grab the gun out of defendant's

hand, defendant ran toward Mitchell's Jeep. Mitchell headed to the corner to call the police but he heard footsteps so he spun around. Defendant and the second man approached Mitchell and the other man hit Mitchell in the face. Mitchell dropped the gun, ran to the public phone and dialed 911. Meanwhile, defendant and the other man ran back to Mitchell's Jeep. A squad car was driving by and Mitchell flagged the police officers. The officers approached Mitchell's Jeep. The man that hit Mitchell in the face was in the driver's side and defendant was sitting in the passenger's side of the vehicle. Defendant jumped out of the Jeep and ran with the police in pursuit.

Officer Collins testified that Mitchell flagged him down and told him that two guys had tried to rob him and they were still in Mitchell's Jeep. There were two individuals inside the Jeep. Both of them fled after looking in the officer's direction. Officer Collins chased defendant to a vacant building located at 59th and Peoria.

Officer Dixon testified that several officers surrounded the vacant building at 5929 S. Peoria. Defendant was hanging out of the second-floor window. When he jumped out and attempted to flee, the officer arrested him.

Defendant testified that at the time in question he was at 59th Street, one block west of Halsted, which is "a drug spot." He was there by himself drinking beer and "tooting" heroin when he got arrested. He did not have a gun that night and he did not rob or attempt to rob anybody.

After the probation revocation hearing, Judge Moran found defendant violated his probation by failing to report, failing to pay, and being found guilty of the subsequent offense. Defendant was sentenced to seven years in the Illinois Department of Corrections.

Defendant first contends that his petition for substitution of judges was erroneously denied. On July 11, 1991, defendant filed a petition for substitution of judges. The petition alleged that Judge Moran was prejudiced against defendant and he would not receive a fair trial. Judge Joyce denied the petition. Supreme Court Rule 402(d)(1) (134 Ill. 2d R. 402(d)(1)) provides that a trial judge shall not initiate plea discussions. As evidence of prejudice, defendant argues that during the preliminary proceeding on the armed robbery case the judge twice attempted to coerce a pretrial conference. Therefore, defendant states Judge Moran was not impartial and defendant's request for substitution of judges should have been granted.

■ A determination of prejudice or lack of prejudice will stand unless it is against the manifest weight of the evidence. (*People v. Mercado* (1993), 244 Ill. App. 3d 1040, 1047, 614 N.E.2d 284, 288.) To prevail on a motion for substitution of judge for cause, defendant has

to show actual prejudice, animosity, hostility, ill will or distrust directed toward the defendant. (*People v. Blanck* (1994), 263 Ill. App. 3d 224, 232, 635 N.E.2d 1356, 1363; *People v. Neumann* (1986), 148 Ill. App. 3d 362, 370, 499 N.E.2d 487, 492.) Here, Judge Moran did not attempt to coerce defendant to plead guilty. Defendant characterizes wrongly the trial court's actions as requests for a plea conference. The record shows that the trial judge merely inquired whether defense counsel would require a conference. Based on new information brought forth by the State, the trial judge again asked defense counsel whether there would be a request for a pretrial conference. These polite inquiries do not amount to coercing defendant to plead guilty. Defendant's allegation that Judge Moran's statement that he was backed up on juries was intended to pressure defendant into a pretrial conference is also without merit. Immediately after that statement, the trial judge stated he would give the matter a short date and if he could get to it he would give defendant a jury trial. Accordingly, the denial of defendant's motion for substitution of judge is not against the manifest weight of the evidence.

Defendant next contends that the State failed to prove that defendant willfully refused to pay his probation fee. The State presented evidence that defendant did not pay the probation fee, and defendant argues this is insufficient to revoke probation. Defendant adds that it is the State's burden to prove that his failure to pay was willful, and where no such evidence is presented, probation cannot be revoked.

Probation shall not be revoked for failure to comply with conditions of supervision which impose financial obligations upon the offender unless such failure is due to his willful refusal to pay. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—4(d); *People v. Boucher* (1974), 57 Ill. 2d 225, 228, 311 N.E.2d 679, 681.) However, a defendant's failure to make *bona fide* efforts to pay his probation fee "may reflect an insufficient concern for paying the debt he owes to society for his crime." (*Bearden v. Georgia* (1983), 461 U.S. 660, 668, 76 L. Ed. 2d 221, 230, 103 S. Ct 2064, 2070.) Where defendant makes no effort either to pay restitution or to explain why he is unable to do so, the trial court may revoke probation. (*People v. Moaton* (1989), 182 Ill. App. 3d 161, 165, 537 N.E.2d 989, 992-993.) This case is distinguishable from *Boucher*, which defendant cites in support of his argument. In *Boucher*, the defendant had made a payment and testified that he was unsuccessful in his attempts to obtain employment. His welfare stipend was sent to his brother, who was caring for his three children, and his unemployment compensation went toward his rent and the care of his wife, who was in an institution. During oral argument

Boucher's attorney indicated that Boucher was presently employed and still wished to make reasonable restitution.

■ In this case, the State presented evidence that defendant made none of the $25 monthly payments. Unlike *Boucher*, there was no evidence that defendant showed concern for paying his debt to society. Defendant never stated he attempted to secure employment and still wished to make reasonable payments. Defendant did not try to borrow money to make any of the monthly payments. There is no evidence that defendant tried to contact the probation department to explain his predicament and try to work something out. In fact, defendant had no contact with the adult probation department in March, April or May. We find that defendant's probation was properly revoked for failure to pay his probation fee.

Defendant next contends that the trial court denied him due process by failing to prepare a written statement setting forth the evidence upon which the court relied in revoking his probation as required in *Black v. Romano* (1985), 471 U.S. 606, 613-14, 85 L. Ed. 2d 636, 643-44, 105 S. Ct. 2254, 2259, and *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 786, 36 L. Ed. 2d 656, 664, 93 S. Ct. 1756, 1762.

Defendant's argument fails to consider *People v. Beard* (1974), 59 Ill. 2d 220, 319 N.E.2d 745, *cert. denied* (1975), 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999. In *Gagnon*, the issue was a determination to revoke probation made by the Wisconsin Department of Public Welfare. The Illinois Supreme Court in *Beard* held that the Illinois statute governing probation revocation satisfied the due process requirements set out in *Gagnon*. Under Illinois statutory provisions, a judicial hearing is required prior to revocation, where the defendant has a right of confrontation, cross-examination, and representation by counsel, and defendant can appeal an adverse decision under Supreme Court Rule 604(b); therefore, due process requirements are met. *People v. Beard*, 59 Ill. 2d at 226, 319 N.E.2d at 747-48.

In light of the protections afforded by the Illinois statute, Illinois courts have modified some aspects of the due process requirement. (*People v. Monick* (1977), 51 Ill. App. 3d 783, 786, 367 N.E.2d 225, 228; *People v. Cozad* (1987), 158 Ill. App. 3d 664, 674, 511 N.E.2d 211, 218.) A written statement setting forth the evidence relied upon to revoke probation is not essential. (*People v. Cozad* (1987), 158 Ill. App. 3d 664, 674, 511 N.E.2d 211, 218.) Where the record contains adequate evidence to support the trial court's findings, enough to preserve an adequate basis of review, a written statement is unnecessary. *People v. Cozad* (1987), 158 Ill. App. 3d 664, 674-75, 511 N.E.2d 211, 218.

■ In a probation revocation hearing, the State only needs to establish the violation of one of the conditions of probation by a

preponderance of the evidence. (*People v. Salamon* (1984), 126 Ill. App. 3d 1066, 1070, 468 N.E.2d 168, 170.) The trial court stated that, as to the failure to pay the probation fee, there was a finding of guilty. This finding alone is sufficient grounds to revoke defendant's probation. The record contains the evidence relied upon for that finding. The evidence includes the original probation order, probation officer Parrilli's testimony, and the defendant's probation department record sheet. Defendant has not shown that the lack of a written statement detailing the evidence relied upon and the reasons revoking probation has prejudiced him.

Defendant focuses on the fact that he was charged with three offenses. He was charged with armed robbery, burglary, and armed violence. In revoking defendant's probation, the trial court stated, "as to the subsequent offense, there is a finding of guilty." Defendant argues that the trial court's failure to specify which of the three offenses formed the basis for the probation revocation forecloses meaningful appellate review. However, the transcript and record before us enable the reviewing court to determine the basis of the judge's decision to revoke probation. The State introduced sufficient evidence to prove by a preponderance of the evidence that defendant committed all three offenses. These offenses arose out of the same incident on May 21, 1991. The armed robbery was proven when Mitchell testified that the defendant pointed a revolver to his head and when his keys fell the other man picked them up and ran to Mitchell's Jeep. The police later found defendant with the other man inside Mitchell's Jeep. Defendant was liable on an accountability theory for taking Mitchell's keys. When the police saw him in Mitchell's Jeep, defendant attempted to flee. In addition, the State proved the elements of burglary by a preponderance of the evidence. Defendant entered Mitchell's vehicle with the intent to steal the Jeep. Because the State introduced sufficient evidence to prove by a preponderance of the evidence that defendant committed the felony of burglary while armed with a dangerous weapon, the elements of armed violence were also proven.

Defendant next contends that it was improper to revoke his probation because of failure to report. Other than February 5, 1991, or June 14, 1991, there was no evidence that defendant was ever asked to report. Defendant claims that he did not need to show up at the probation department unless probation officers set up an appointment, and the record entries support this contention because they indicate he failed to appear only on February 5 and June 14, 1991. February 5, 1991, is not alleged in the State's petition as a basis for revocation; thus, defendant points out, revoking his probation on the

ground that he did not report on that date would violate his constitutional right to written notice. Furthermore, on June 14, 1991, defendant was incarcerated, rendering him unable to report.

A single instance of failure to report to the probation officer is sufficient grounds for probation revocation. (*People v. Cozad* (1987), 158 Ill. App. 3d 664, 669, 511 N.E.2d 211.) The probation order indicates defendant was placed on a two-year "reporting" probation. The order also reveals defendant had to pay $25 a month and that defendant signed the order. Defendant's probation officer testified that defendant was supposed to pay the $25 per month on a report date and this was the usual practice with a defendant who had to pay off a probation fee on a monthly basis. She also testified that he failed to report in March, April and May of 1991.

■ However, it is unclear to us from the record that defendant had to report monthly or on a specific report date. It is possible that defendant had to report only as notified. If, as the State tried to prove, defendant had to report every month, it is unexplained why the record entries indicate he failed to report only on February 5 and June 14. There are no failure-to-appear entries on any dates in March, April or May. Probation officer Parrilli was not assigned to defendant's case until after he was taken into custody in June. Parrilli's testimony was not based on personal knowledge but rather was based on the officer's reading of the defendant's probation department record. We find that the State has failed to establish by a preponderance of the evidence that defendant failed to report as required by his probation order.

Lastly, defendant contends that this cause should be remanded for resentencing because it reflects improper findings and because it is excessive with respect to the original offense. Defendant alleges that the three asserted violations are presumably reflected as part of the seven-year sentence and the trial court should upon resentencing subtract any time attributable to an improper ground for revocation.

The trial court's discretion in sentencing shall not be altered absent an abuse of discretion. (*People v. Young* (1985), 138 Ill. App. 3d 130, 142, 485 N.E.2d 443, 450.) Upon revocation of probation, the sentence imposed shall be for the original conviction and not for a subsequent offense. (*People v. Clayton* (1977), 51 Ill. App. 3d 682, 684, 366 N.E.2d 386, 388.) However, the manner in which a defendant conducts himself while on probation may be considered to determine rehabilitative potential. *People v. Young* (1985), 138 Ill. App. 3d 130, 142, 485 N.E.2d 443, 450.

■ The trial judge sentenced defendant to seven years of imprisonment, the maximum penalty for robbery. (See Ill. Rev. Stat. 1989, ch.

38, pars. 18—1(b) (robbery is a Class 2 felony), 1005—8—1(a)(5) (the penalty for Class 2 felonies is three to seven years).) Defendant's sentence was within the statutory range for robbery. Lack of concern about the payment of his probation fee and the commission of a subsequent offense diminish the court's faith in defendant's rehabilitative potential. We cannot say that the trial court abused its discretion when it sentenced defendant to seven years of imprisonment for the underlying offense which resulted in his probation.

For the aforementioned reasons, we affirm the judgment of the trial court.

Affirmed.

GREIMAN, P.J., and TULLY, J., concur.