2025 IL App (2d) 240609
No. 2-24-0609
Opinion filed August 8, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-1481 |
| NALANIA VARGAS, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Birkett and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Nalania Vargas, appeals from an order of the circuit court of Kane County that

terminated her probation unsatisfactorily based on her failure to pay a court-ordered probation fee.

Defendant contends that the State failed to prove that her failure to pay was willful. The State

contends that the appeal is moot and, alternatively, that the evidence was sufficient to justify

revoking defendant's probation. We agree that the appeal is moot. Accordingly, we dismiss the

appeal.

¶ 2                                    I. BACKGROUND

¶ 3      On April 8, 2021, defendant was indicted on two counts of aggravated battery (720 ILCS 5/12-3.05(b)(2) (West 2018)), both Class 3 felonies (*id.* § 12-3.05(h)), for allegedly striking her son with a belt and causing him bodily harm.

¶ 4      On January 5, 2022, the State amended the indictment to add a count of domestic battery (*id.* § 12-3.2(a)(2)), a Class A misdemeanor (*id.* § 12-3.2(b)). That day, defendant pleaded guilty to that count, and the State nol-prossed the other two counts. According to the factual basis of the plea, on August 15, 2020, defendant struck her son on his body, which insulted and provoked him. When the trial court admonished defendant as to the possible consequences of pleading guilty, defense counsel stated: "[Defendant] has asylum status here in the United States, and I have discussed that with her and just wanted to make a record of that." The court sentenced defendant to 116 days in jail, with good time to apply, and awarded her 58 days' credit for time served. Additionally, the court placed defendant on 24 months' probation. As a condition of probation, defendant was to comply by January 3, 2024, with "[a]ll conditions of the Financial Sentencing Order," which required defendant to pay a $480 probation fee ($20 per month for 24 months).

¶ 5      On February 28, 2022, a "Notification of Changes to the Probation Fee Schedule" was filed, which provided as follows:

>    "[D]efendant's probation supervision has been transferred from Kane County, and accepted by Cook County as of 2/24/22. *** [D]efendant has been assessed a probation fee of $20/month for 2 months, and has paid a total of $0 prior to acceptance of transfer. *** [D]efendant is *** in arrears $40 to Kane County."

It provided further that "[f]uture probation fee payments will be paid to the Clerk of the Circuit Court in the receiving county of Cook in the amount of $20/month for 22 months."

¶ 6    In December 2023, the State filed two petitions to revoke probation, alleging, among other things, that defendant failed to pay the $40 probation fee still due and failed to comply with specific drug treatment requirements. At a hearing on January 29, 2024, the trial court addressed only the issue of drug treatment. It continued the matter to allow defendant time to complete the required treatment. In April 2024, the State filed an additional petition to revoke probation, alleging that defendant failed to report to her probation officer. The matter was set for a hearing on May 10, 2024. On that date, defendant failed to appear, and the court issued a warrant for her arrest. Defendant was eventually taken into custody and released. The pending petitions were initially set for a hearing on September 12, 2024, but were rescheduled for the following day. On September 12, the State filed an amended petition to revoke probation, alleging that defendant (1) failed to pay the remaining $40 probation fee; (2) failed to complete substance abuse treatment; (3) tested positive for hydrocodone, hydromorphone, morphine, and cocaine on August 6, 2024; and (4) tested positive for cocaine on August 22, 2024.

¶ 7    The revocation hearing took place on September 13, 2024. The State clarified that it was proceeding not only on the amended petition filed on September 12 in the present case, but also on a petition to revoke that had been filed in case No. 21-CM-2153.[1] At the outset of the hearing, the State asked the trial court to take judicial notice of documents filed in case No. 21-CM-2153 on March 3, 2023: (1) a "[p]lea of [g]uilty," and (2) a "sentencing order, *** contained on an ECO order, which indicate[d] a fine owed of $750." The State also asked the court to consider the documents filed in the present case on January 5, 2022: (1) the "Judgment Order," (2) the "Plea of Guilty," and (3) the "Rules and Conditions of Probation." Finally, the State requested that the court

---

[1]The common-law record does not contain any documents from case No. 21-CM-2153.

take judicial notice that, among other things, (1) there was a balance of $750 due in case No. 21-CM-2153 and (2) a balance of $40 due in the present case.

¶ 8 The State presented testimony from two witnesses: defendant's probation officer, Renee Buchman, and defendant. The State attempted to elicit testimony from Buchman concerning drug testing results, but the trial court barred such testimony. Buchman testified that her file for defendant contained a certificate that she completed substance abuse treatment.

¶ 9 Defendant testified (with the assistance of an interpreter) that she recalled pleading guilty on March 3, 2023, to unlawful possession of drug paraphernalia in case No. 21-CM-2153 and being told that she would owe a $750 fine. She further testified that she recalled pleading guilty on January 5, 2022, to domestic battery in this case and being told that she would have to pay fines in this case. When asked whether she had made any payments toward either amount, she testified, "I have not. I have not paid. I lost my job." Defendant testified that she did not receive any government assistance. Defendant last worked in September 2023 as a forklift driver. When asked approximately how much she made per paycheck, she stated: "It depended on the hours. 500 to 530." She was paid "[e]very week, but [she] had to pay for rent and for the children, transportation." She testified that she (1) was unable to file a tax return or receive a refund because "[her] work permit [was] not valid," but was "expired"; (2) was living with someone and did not pay rent; (3) stopped paying rent in October 2023; (4) had two sons, ages 9 and 12, who did not live with her; and (5) "ha[d] not been providing for [her] children during this time."

¶ 10 In closing, the State indicated that it was "only arguing as to the money owed," and it asked the trial court to find that defendant's failure to pay was willful.

¶ 11 The trial court found that the State proved by a preponderance of the evidence that defendant's failure to pay the fine and fee constituted a willful refusal to pay. The court stated:

"The defendant testified that she was working and making at least $2,000 a month for whatever period of time, and while that's uncertain, there is an indication that she was making that sum of money for some period of time.

There's no indication that she's unable to work now, just that she's not working, and from what I gather of the testimony, she has not paid any money on 21[-]CM[-]1253 or on [this case]. She certainly had the ability to pay something, but she's made no effort to do that at all."

The court concluded: "I will terminate the court supervision unsatisfactorily and the probation unsatisfactorily and send the fines, costs[,] and fees to collections."

¶ 12     Although the trial court revoked the probation terms in this case and No. 21-CM-1253, defendant filed a notice of appeal in this case only.

¶ 13                                II. ANALYSIS

¶ 14     Defendant contends that the State failed to prove by a preponderance of the evidence that her failure to pay the probation fee constituted a willful refusal to pay. See 730 ILCS 5/5-6-4(d) (West 2022) ("Probation, conditional discharge, periodic imprisonment and supervision shall not be revoked for failure to comply with conditions of a sentence or supervision, which imposes financial obligations upon the offender unless such failure is due to his willful refusal to pay."). Anticipating a mootness argument from the State, she claims that the matter "presents a live legal controversy because of [the] attendant consequences" of a probation revocation.

¶ 15     In response, the State contends that the matter is moot because defendant's sentence has been fully served and she has failed to identify any injuries to support application of the "collateral consequences" exception to mootness (see *In re V.S.*, 2025 IL 129755, ¶ 54). Mootness aside, the

State argues that it proved by a preponderance of the evidence that defendant willfully refused to pay the probation fee.

¶ 16    In reply, defendant argues for the first time that she suffered collateral consequences in that "[t]he unsatisfactory termination of probation can affect immigration proceedings."

¶ 17    We first consider whether the matter is moot. "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009); *People v. Cousins*, 2023 IL App (1st) 230234, ¶ 8. "An appeal is moot when there is no actual controversy and a reviewing court's decision could have no practical effect on the parties, rendering it 'impossible for the reviewing court to grant effectual relief.' " *V.S.*, 2025 IL 129755, ¶ 54 (quoting *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006)). However, a reviewing court will decide a moot question if one of the following exceptions apply: "(1) when resolution is in the public's interest, (2) where the issue is capable of repetition yet evading review, and (3) where collateral consequences to the appellant arise from the judgment." *Id.* The parties here address only the collateral consequences exception. "The collateral consequences exception to mootness allows for appellate review, even though a court order or incarceration has ceased, because a plaintiff has ' "suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." ' " *Alfred H.H.*, 233 Ill. 2d at 361 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).

¶ 18    Here, the question of mootness arises because defendant's sentence has been fully served. Nothing we do can have any effect on her sentence or the probation fee that defendant is required to pay. When the trial court accepted defendant's guilty plea, it imposed a 116-day jail sentence, with good time to apply, and awarded her credit for 58 days' already served. Thus, her jail sentence

was satisfied upon entry of the judgment, leaving only her probation term to be served. By the time the court terminated defendant's probation (albeit, as unsatisfactory), the 24-month probation term had already expired and the $40 probation fee remained due. If we were to reverse the court's order terminating probation, there would be no effect on defendant's sentence, and she would still owe $40. To be sure, a reversal would remove the probation revocation from defendant's record. The question is whether this warrants application of an exception to mootness.

¶ 19     In a single-paragraph argument in her opening brief, defendant cites *Cousins*, 2023 IL App (1st) 230234, ¶ 13, for the proposition that "Illinois appellate courts are split on the question of whether a defendant can challenge their probation revocation after the revocation sentence has been served." *Cousins* held that the defendant's appeal from his probation revocation was moot because he had completed his sentence and no exception to mootness applied. *Id.* ¶¶ 15-17. Without discussing the facts or holding of *Cousins*—the most recent authority on the issue—or the "split" referenced therein, defendant cites our 1977 decision in *People v. Monick*, 51 Ill. App. 3d 783, 785 (1977), to support her contention that she can challenge her probation revocation because "the revocation may affect any future sentencing hearings involving the same defendant." Thus, we begin our discussion with *Monick*.

¶ 20     In *Monick*, the defendant was placed on probation for burglary. *Id.* His probation was subsequently revoked for a violation, and the trial court sentenced him to 20 to 60 months in prison. *Id.* The defendant appealed, alleging due process violations in the revocation process and challenging the sufficiency of the evidence supporting the violation. *Id.* By the time his appeal was heard, he had been placed on parole. *Id.* We rejected the State's argument that, because the defendant was on parole, the matter was moot. *Id.* We declined to adhere to our prior decision in *People v. North*, 3 Ill. App. 3d 428, 429 (1972), wherein we held that the defendant's appeal from

his probation revocation was moot because he was "presently on parole." See *Monick*, 51 Ill. App. 3d at 785. Instead, we concluded in *Monick*: "Adverse consequences which may result even if the defendant is not confined prevent mootness since he may be subject to re-sentencing." *Id.* In support, we cited cases from the First and Fourth Districts—*In re Sturdivant*, 44 Ill. App. 3d 410, 412-13 (1976), and *People v. Halterman*, 45 Ill. App. 3d 605, 608 (1977), respectively. We turn to those decisions.

¶ 21    In *Sturdivant*, the juvenile defendant was found delinquent and placed on three years' probation. *Sturdivant*, 44 Ill. App. 3d at 411. He later admitted that he violated probation by committing attempted robbery, and he was imprisoned. *Id.* He appealed, arguing that a due process violation occurred at the probation revocation hearing. *Id.* The State argued that the appeal should be dismissed as moot because the defendant had fully served his sentence. *Id.* at 412. In rejecting that argument, the First District noted foremost that there was no evidence in the record of the defendant's release. *Id.* Alternatively, the court reasoned: "[W]e recognize the effect the instant improper probation revocation could have at any future sentencing hearing in a case involving this juvenile should this appeal be dismissed." *Id.*

¶ 22    In *Halterman*, the defendant was placed on two years' probation after pleading guilty to deceptive practices. *Halterman*, 45 Ill. App. 3d at 606. His probation was later revoked on the ground that he had committed theft, and he was sentenced to 364 days in prison. *Id.* The State argued that, because the defendant had fully served his sentence, the appeal was moot. *Id.* at 608. The Fourth District disagreed, stating:

> "[D]isabilities and adverse collateral consequences automatically flow from entry of the court's judgment which foreclose an allegation of mootness even though the defendant has served his sentence. [Citations.] Here, the fact that the defendant has had his probation

revoked might be submitted to another judge for his consideration in sentencing the

defendant if he has the misfortune of again being convicted of some crime." *Id.*

¶ 23    *Monick*, *Sturdivant*, and *Halterman* each stand for applying the collateral consequences

exception to revocation appeals that would otherwise be deemed moot because the sentence

imposed upon revocation was fully served.[2] Those decisions agree that a probation revocation

satisfies the exception because it may be considered as an aggravating factor in future sentencing.

¶ 24    The Fifth District, in *People v. Yackle*, 42 Ill. App. 3d 695, 696 (1976)—a decision that

predated *Monick*, *Sturdivant*, and *Halterman*—agreed with our decision in *North* and held that the

defendant's appeal from the revocation of his probation was moot:

> "Since the scope of review on appeal from revocation of probation is restricted to issues
>
> arising from the revocation proceedings, the maximum relief here would be the vacation
>
> of the order of revocation and sentence and the consequent return of [the] defendant to

---

[2]Notably, because the defendant in *Monick* was on parole (subject to resentencing) and thus could

be granted effectual relief on appeal, the matter was clearly *not* moot and we had no need to rely on cases

where, in contrast, the sentences were fully served when the question of mootness arose, and the courts'

consideration centered on whether a probation revocation poses sufficient detriment to satisfy the collateral

consequences exception (see *Halterman*, 45 Ill. App. 3d at 608; *Sturdivant*, 44 Ill. App. 3d at 412).

Nonetheless, because of *Monick*'s citations to *Sturdivant* and *Halterman*, *Monick* has been construed as

agreeing with those decisions that a probation revocation is sufficiently injurious to meet the exception. See

*People v. Dawson*, 2020 IL App (4th) 170872, ¶ 12. Likewise, cases disagreeing with *Monick* on similar

facts (where the defendant had finished the prison sentence imposed upon revocation and was released on

parole) have been construed as taking a contrary position on the impact of a probation revocation. *Id.* ¶¶ 12-

13 (contrasting *Monick*, with *People v. Yackle*, 42 Ill. App. 3d 695 (1976)).

probationary status. Because, however, [the] defendant has been released on parole from the sentence imposed on the revocation, he could thus obtain no effective relief." And less than a year after *Yackle*, the Fifth District reached the opposite conclusion in *People v. Seymour*, 53 Ill. App. 3d 367, 370 (1977): "Although the [prison] term has been served, the results of the probation revocation may persist. Subsequent convictions may carry greater penalties; civil rights may be affected. The instant case involves parole status dependent upon close supervision ***."

¶ 25   Over 40 years later, in *People v. Dawson*, 2020 IL App (4th) 170872, the Fourth District again confronted the issue of whether the collateral consequences exception applies to an appeal from an order revoking a defendant's probation if the defendant had fully served the sentence. In *Dawson*, the defendant entered a negotiated guilty plea to aggravated battery and was sentenced to 30 months' probation. *Id.* ¶ 3. Subsequently, her probation was revoked, and she was resentenced to two years in prison. *Id.* ¶¶ 1, 5-6. She appealed, and the Office of the State Appellate Defender (OSAD) was appointed to represent her. *Id.* ¶ 1. OSAD later moved to withdraw, asserting that the matter was moot because the defendant had completed her sentence. *Id.* ¶¶ 1, 6, 8. The court agreed. *Id.* ¶ 22.

¶ 26   The *Dawson* court began its analysis by noting that the defendant's sentence was "completely discharged" and that, as a "general rule," an appeal in such cases is moot because "[i]t would be impossible to grant effectual relief from a sentence that the defendant already has served." *Id.* ¶¶ 8-9. But the court then considered whether the collateral consequences exception applied under the circumstances. *Id.* ¶ 9. The court recognized that, in the context of a felony conviction, it was "easy to prove or presume collateral consequences"—for instance, "[f]elons lose the right to possess firearms [citation], *** and to take the oath of office for a municipal position."

*Id.* ¶ 10. Thus, because "[a] felony conviction probably will continue to inflict actual harm upon a defendant after the defendant has fully served the sentence," the collateral consequences exception would allow a defendant to challenge that conviction. *Id.* The court queried whether "the same logic appl[ies] to a revocation of probation if the defendant has fully served the new or revised sentence." *Id.* ¶ 11.

¶ 27 The court acknowledged that its *Halterman* decision would answer that question in the affirmative, as would *Monick* and *Sturdivant* (and *Seymour*). *Id.* ¶¶ 11-12. The court noted, however, that *Yackle* and *North* would disagree. *Id.* ¶ 13. To resolve the conflict among our appellate districts, the Fourth District turned to the United States Supreme Court's decision in *Spencer*, which was decided after the aforementioned cases. *Id.* ¶ 14.

¶ 28 In *Spencer*, the petitioner sought a writ of *habeas corpus*, seeking to invalidate an order revoking his parole. *Spencer*, 523 U.S. at 3, 5-6. He challenged only the "wrongful termination of his parole status." *Id.* at 8. At issue before the Court was whether the petitioner's subsequent release from prison "caused the petition to be moot because it no longer presented a case or controversy under Article III, § 2, of the Constitution [(U.S. Const., art. III, § 2)]." *Id.* at 7. The Court noted that " '[t]he parties must continue to have a "personal stake in the outcome" of the lawsuit.' " *Id.* (quoting *Lewis*, 494 U.S. at 478). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Id.* (quoting *Lewis*, 494 U.S. at 477).

¶ 29 The Court recognized that "[a]n incarcerated convict's *** challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration *** constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Id.* "Once the convict's sentence has expired, however, some *concrete and continuing*

*injury* other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." (Emphasis added.) *Id.* The Court held that, although it might have been willing to presume the existence of collateral consequences stemming from a criminal conviction, it would not extend that presumption to a parole revocation once the sentence for the violation ends. *Id.* at 8-14. Instead, the defendant must demonstrate that the parole revocation he is challenging has ongoing collateral consequences. *Id.* at 14.

¶ 30   The petitioner in *Spencer* alleged "four concrete injuries-in-fact attributable to his parole revocation." *Id.* The petitioner claimed that his parole revocation could be used (1) to his detriment in a future parole proceeding, (2) to increase his sentence in a future sentencing proceeding, (3) to impeach him should he appear as a witness or litigant in a future criminal or civil proceeding, or (4) as direct evidence of guilt should he appear as a defendant in a criminal proceeding. *Id.* at 14-16.

¶ 31   The Court rejected all the proffered circumstances as too speculative to constitute injuries-in-fact. As to the first alleged injury—that the revocation could be used to the petitioner's detriment in a future parole proceeding—the Court noted that it was "a possibility rather than a certainty or even a probability." *Id.* at 14. In addition, the Court emphasized that a prior parole violation would not render the petitioner ineligible for parole; instead, it would be " 'simply one factor, among many, that may be considered by the parole authority.' " *Id.* (quoting *Lane v. Williams*, 455 U.S. 624, 633 n.13 (1982)). The Court rejected the petitioner's second alleged injury—that the parole revocation could be used to increase his sentence in a future sentencing proceeding—finding that it was contingent upon the petitioner "violating the law, getting caught, and being convicted," which the petitioner had the power to prevent from occurring. *Id.* at 15. The Court rejected the petitioner's third and fourth alleged injuries—that the parole revocation could be used as

impeachment or as evidence of guilt in future proceedings—for similar reasons, noting that the petitioner's claims were "purely *** matter[s] of speculation." *Id.* at 16.

¶ 32    The *Dawson* court concluded that *Spencer* "tend[ed] to vindicate *Yackle* and *North*." *Dawson*, 2020 IL App (4th) 170872, ¶ 14. Relying on *Spencer*, the *Dawson* court disagreed with its holding in *Halterman*, stating: "[I]t should have been taken for granted in *Halterman* that there would be no future occasion for a judge to frown on the defendant's parole revocation." *Id.* ¶ 18. It concluded: "We assume and expect the same of [the] defendant in the present case. We take it as a given that she will never again find herself in a sentencing hearing. Thus, she lacks a personal stake in the question of the probation revocation, and this appeal is moot." *Id.* ¶ 19. Accordingly, the court granted OSAD's motion to withdraw and dismissed the appeal. *Id.* ¶ 22.

¶ 33    Later, the First District followed suit in *Cousins*, 2023 IL App (1st) 230234, ¶ 15. There, the defendant was convicted of aggravated criminal sexual abuse and sentenced to 30 months' probation. *Id.* ¶ 3. The State petitioned to revoke the defendant's probation for failing to attend sex offender treatment as required under the terms of his probation. *Id.* Following a hearing, the trial court revoked the defendant's probation and sentenced him to four and a half years in prison. *Id.* ¶ 4. On appeal, the defendant argued that he was deprived of a fair revocation hearing because the court relied on improper hearsay evidence over his objection. *Id.* ¶ 8. The State argued that the appeal was moot because the defendant had completed his sentence. *Id.*

¶ 34    The First District agreed with *Dawson*'s conclusion that, under *Spencer*, "[the defendant] must identify concrete injuries-in-fact deriving from his probation revocation." *Id.* ¶ 15. The *Cousins* defendant argued that collateral consequences existed in that (1) he could never challenge the trial court's revocation determination and (2) he was subject to lifetime sex offender registration and reporting requirements. *Id.* The court rejected his argument. *Id.* The court found

that neither consequence was a result of the probation revocation. *Id.* The fact that his legal remedies were exhausted was because he completed his sentence. *Id.* And his lifetime registration and reporting requirements were due to the underlying conviction. *Id.* Accordingly, the court dismissed the matter as moot. *Id.* ¶ 19.[3]

¶ 35    We agree with both *Dawson* and *Cousins* and hold that, under the reasoning espoused in *Spencer*, (1) defendant's challenge to her probation revocation is moot because she has completed her sentence and (2) to warrant application of the collateral consequences exception to mootness, defendant must establish concrete injuries-in-fact resulting from her probation revocation. We decline to follow *Monick*, *Halterman*, *Sturdivant*, and *Seymour* because they predate *Spencer*.

¶ 36    We now consider whether defendant has established collateral consequences sufficient to warrant finding an exception to mootness. As already noted, defendant's opening brief addresses this issue in a single paragraph. She cites *Cousins* solely to note the split of authority among districts, but she does not address that split or discuss *Cousins*'s applicability here. Instead, relying on *Monick*, she argues she can challenge her probation revocation because "the revocation may affect any future sentencing hearings involving [her]." However, because this argument is premised entirely on what might happen in a future criminal case that might never arise, it does not warrant application of the collateral consequences exception. See *Dawson*, 2020 IL App (4th) 170872, ¶ 19. We presume that defendant will never again find herself in a sentencing hearing.

---

[3]We note, too, that, prior to its *Cousins* decision, the First District, in *People v. Musawwir*, 2022 IL App (1st) 211546-U, ¶ 17, also agreed with *Dawson*. In *Musawwir*, the court dismissed the defendant's appeal challenging the revocation of his probation for failing to pay restitution. *Id.* ¶ 2. The court found that all the defendant's claimed collateral consequences were "premised entirely on what might happen in future criminal cases that do not yet exist and that may never exist." *Id.* ¶ 21.

¶ 37    Nevertheless, defendant presents an entirely new argument in her reply brief. She contends that the unsatisfactory termination of her probation "carries consequences for ongoing immigration proceedings." She claims that "[t]hroughout the pre-trial period and at the time of her guilty plea, [she] was involved in immigration proceedings, applying for asylum status." Further, she asserts that the record does not indicate that "those immigration proceedings have concluded or that [she] has become a U.S. citizen." According to defendant, "[t]he unsatisfactory termination of probation can affect immigration proceedings, as it is a factor considered in determining whether an applicant is eligible for naturalization."

¶ 38    First, we find that, because this argument was not raised in her initial brief on appeal, it is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (The argument in the appellant's initial brief on appeal "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *Franciscan Communities, Inc. v. Hamer*, 2012 IL App (2d) 110431, ¶ 19. To be sure, defendant argued generally in her opening brief that the issue was not moot. However, she based her argument on only the assertion that the probation revocation might affect future sentencing proceedings. That was the argument to which the State responded. Nowhere in her opening brief did defendant argue the existence of any collateral consequences relating to ongoing or future immigration proceedings. Nor can it be said that the argument was properly raised in response to an argument raised in the State's brief. See *G.I.S. Venture v. Novak*, 388 Ill. App. 3d 184, 187 (2009) ("Issues raised for the first time in an appellant's reply brief are considered forfeited unless they are responsive to an argument raised in the appellee's brief."). The State made no mention of any immigration issues. Accordingly, we find the argument forfeited.

¶ 39    Forfeiture notwithstanding, defendant has failed to meet her burden to establish concrete injuries-in-fact resulting from her probation revocation to warrant application of the collateral consequences exception to mootness. First, putting aside initially the merits of her claim that the unsatisfactory termination of probation "is a factor considered in determining whether an applicant is eligible for naturalization," defendant has failed to establish that she has applied or will apply for naturalization. "[C]ollateral consequences cannot be based on 'vague, unsupported' statements about the future." *V.S.*, 2025 IL 129755, ¶ 61 (quoting *In re Rita P.*, 2014 IL 115798, ¶ 34).

¶ 40    According to defendant, throughout the case below, "[she] was involved in immigration proceedings, applying for asylum status." In support of this assertion, defendant cites two instances in the record. In the first instance, on November 18, 2021, defense counsel referenced having had "a conversation with [defendant's] [i]mmigration [a]ttorney," but there is no indication as to the substance of that conversation. In the second instance, during the January 2022 plea hearing, defense counsel stated: "[Defendant] has asylum status here in the United States, and I have discussed that with her and just wanted to make a record of that." Even if we were willing to find, based on this scant evidence, that defendant has asylum status in the United States, we are not willing to infer, based on that same evidence, that defendant is or will be seeking to obtain United States citizenship through naturalization. Defendant does not claim that any collateral consequences are affecting her asylum status.

¶ 41    Second, even if we were to conclude that the record allowed for a reasonable inference that defendant may, at some point in the future, decide to apply for naturalization, we cannot conclude that she would suffer a concrete injury-in-fact from her probation revocation that would warrant application of the collateral consequences exception. "Application of the collateral consequences exception is determined on a case-by-case basis." *Id.*

¶ 42    To support her claim that a probation revocation is "a factor considered in determining whether an applicant is eligible for naturalization," defendant cites two sources. The first is a provision of the United States Citizenship and Immigration Services Policy Manual (USCIS Manual), which addresses the "[e]ffect of [p]robation" on the determination as to whether an applicant has demonstrated "Good Moral Character" (GMC) as required for naturalization. *Policy Manual*, U.S. Dep't of Homeland Sec., U.S. Citizenship & Immigr. Servs., vol. 12, pt. F, ch. 2, § D (updated June 24, 2025), https://www.uscis.gov/policy-manual/volume-12-part-f-chapter-2 [https://perma.cc/NV9X-4EW7]. The provision states in full:

> "An officer may not approve a naturalization application while the applicant is on probation, parole, or under a suspended sentence. However, an applicant who has satisfactorily completed probation, parole, or a suspended sentence during the relevant statutory period[4] is not automatically precluded from establishing GMC. The fact that an applicant was on probation, parole, or under a suspended sentence during the statutory period, however, may affect the overall GMC determination." *Id.*

¶ 43    The second source defendant cites is section 316.10(c)(1) of Title 8 of the Code of Federal Regulations (8 C.F.R. § 316.10(c)(1) (1993)), which was cited in the above provision from the USCIS Manual. Section 316.10(a)(1) addresses the requirement that "[a]n applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of [GMC]." *Id.* § 316.10(a)(1). Section 316.10(c)(1) concerns the "[e]ffect of probation or parole" on GMC and states:

---

[4]The "statutory period" is the period during which the applicant must show GMC.

"An applicant who has been on probation, parole, or suspended sentence during all or part of the statutory period is not thereby precluded from establishing [GMC], but such probation, parole, or suspended sentence may be considered by the Service in determining [GMC]. An application will not be approved until after the probation, parole, or suspended sentence has been completed." *Id.* § 316.10(c)(1).

¶ 44 To be sure, defendant is correct that, should she apply for naturalization, her probation can be considered a factor in determining GMC. The unsatisfactory termination of her probation would undoubtedly factor in the GMC equation. However, "collateral consequences must be identified that 'could stem *solely* from the present adjudication.' " (Emphasis in original.) *V.S.*, 2025 IL 129755, ¶ 61 (quoting *Alfred H.H.*, 233 Ill. 2d at 363). Here, defendant has not directed us to any authority establishing that the unsatisfactory termination of her probation would automatically render her ineligible for naturalization. Instead, it would be " 'simply one factor, among many, that may be considered.' " *Spencer*, 523 U.S. at 14 (quoting *Lane*, 455 U.S. at 633 n.13). And, as noted, defendant does not claim any adverse consequences related to her alleged asylum status. Based on the facts of this case, no collateral consequences exist.

¶ 45 Although not addressed by the parties, we also conclude that the remaining two exceptions to mootness do not apply. Under the public-interest exception, defendant must show that "(1) the question presented is of a public nature, (2) there is a need for an authoritative determination for the future guidance of public officers, and (3) there is a likelihood of future recurrence of the question." *Cousins*, 2023 IL App (1st) 230234, ¶ 16. Here, the issue raised by this appeal—whether the evidence was sufficient to establish that defendant willfully failed to pay her $40 probation fee—is not a question of a public nature. See *id.* (noting that "inherently case-specific reviews

typically do not present broad public interest issues" and concluding that the issue of whether two reports admitted during revocation hearings were inadmissible lacked broad public interest).

¶ 46    To satisfy the capable-of-repetition-yet-evading-review exception, "(1) the challenged action must be of a duration too short to be fully litigated prior to its cessation and (2) there must be a reasonable expectation that the same complaining party would be subjected to the same action." (Internal quotation marks omitted.) *Id.* ¶ 17. Here, we find no reason to expect that defendant will be subjected to a probation revocation hearing in the future. Indeed, this would depend on defendant "committing a criminal offense, being convicted, and sentenced to probation for the offense, and violating the probation imposed on the offense." *Id.*

¶ 47    Accordingly, based on the foregoing, we find that defendant has failed to establish any exception to mootness. Thus, the appeal is moot.

¶ 48                                III. CONCLUSION

¶ 49    For the reasons stated, we dismiss this appeal as moot.

¶ 50    Appeal dismissed.

---

### *People v. Vargas*, **2025 IL App (2d) 240609**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-CF-1481; the Hon. David P. Kliment, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Dominique Estes, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward Psenicka, and Gabrielle Moore, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |